## PUBLIC OFFICERS AND EMPLOYEES


Constitutional Law – City Council Members May Be Given Pension Rights But Not Health Insurance Benefits During Their Terms


January 4, 1993


*Mr. William F. Haifley*
*President, Common Council*
*  of Westminster*

You have requested our opinion whether Article III, §35 of the Maryland Constitution, which bars certain in-term increases in compensation for public officers, precludes current members of the Common Council of the City of Westminster from receiving group health insurance benefits and a right to a pension.

For the reasons detailed below, we conclude as follows:

1.     Government payment of group health insurance benefits is "compensation" under Article III, §35 that may not be received by Council members until the start of a new term.

2.     Inclusion in a pension system is not an in-term increase in compensation subject to §35. Accordingly, current members of the Council may be given pension rights prior to the expiration of their terms.


## I

### Background

The facts underlying your request are generally set forth in a March 9, 1992 letter from the Westminster City Attorney, John B. Walsh, Jr.:

> For a substantial number of years, the Mayor has been a member of the City's retirement system and has enjoyed health insurance benefits.  Those benefits are provided to all other City employees. Recently, the Common Council addressed the disparity between the fringe benefits afforded to one of their elected officials, the Mayor, and the other elected members who comprise the Common Council.  As a result, the Mayor and Common Council passed a resolution providing that members of the Common Council should receive the same fringe benefits as the Mayor with respect to placement in the retirement system and the health insurance system.  That action was taken with the intention of providing those benefits to current members of the Common Council.

The "equal fringe-benefit package" for elected officials of the City that was approved on January 27, 1992, consists of a full government health insurance subsidy and a non-contributory pension plan.[1]  It is our understanding that Common Council members have not received any of the benefits in question, pending resolution of issues about the constitutionality and legality of the proposal.

## II

### Purpose and Application of Article III, §35

Article III, §35 provides, in relevant part, that:

> Extra compensation may not be granted or allowed by the General Assembly to any public Officer, Agent, Servant or Contractor,

---

[1] The benefits were fixed prior to the expiration of the current terms of Common Council members.  Three members of the Council are serving four-year terms expiring in 1995; two members are serving four-year terms ending in 1993.  *See* City Charter §3.

> after the service has been rendered, or the contract entered into; nor may the salary or compensation of any public officer be increased or diminished during his term of office except those whose full term of office is fixed by law in excess of 4 years.

The purpose of the second clause of §35 is to prevent a public officer from using his or her office for the purpose of putting pressure on a legislative body to award additional compensation and to prevent the legislative body from pressuring the public officer by offering increased compensation or threatening a decrease. *See Marshall v. Division of Finance*, 294 Md. 435, 438, 450 A.2d 1300 (1982). Even in the absence of such pressures as a factual matter, however, a violation of §35 can be found. 294 Md. at 440.

There is no doubt that members of the Common Council are public officers. *See Truitt v. Collins*, 122 Md. 526, 89 A. 850 (1914); 68 *Opinions of the Attorney General* 358, 359 (1983). Their terms are not in excess of four years. *See* Westminster City Charter §3. Moreover, the proposed equal fringe benefits package was intended to be implemented before the expiration of their terms. The question remains, however, whether these benefits are "compensation" within the meaning of Article III, §35, and, with respect to pension plan inclusion, whether this change increases compensation during the members' term of office.

## III

### Group Health Insurance

Although no opinion of the Attorney General has addressed whether government-funded health insurance is subject to §35, the view of the office as expressed in numerous bill review and advice letters is that furnishing such a benefit increases an officer's compensation within the meaning of this constitutional proscription. *See* Bill Review Letter on House Bill 403 (April 9, 1990); Bill Review Letter on House Bill 1097 (April 3, 1990); Bill Review Letter on Senate Bill 664 (April 28, 1989); Letter of Advice to the Honorable Donald F. Munson (February 12, 1988); Letter of Advice

to the Honorable Ida G. Ruben (January 31, 1983). *See also* Letter of Advice to the Honorable John J. Hafer (April 30, 1991).

This position is also supported by cases from other jurisdictions. *See State ex rel. Parsons v. Ferguson*, 318 N.E. 2d 692 (Ohio 1976); *Opinion by the Justices*, 30 So. 2d 14, 17 (Ala. 1947). *See generally* 63A Am. Jur. 2d *Public Officers and Employees* §450, at 1000 (1984); 67 C.J.S. *Officers* §234, at 746 (1978).

In *Parsons*, the Supreme Court of Ohio held that payments for insurance premiums to certain elected officials during the middle of their term resulted in an unconstitutional increase in compensation:

> Fringe benefits, such as the payments made here, are valuable perquisites of an office, and are as much a part of the compensations of office as a weekly pay check. It is obvious that an office holder is benefitted and enriched by having his insurance bill paid out of public funds; just as he would be if the payment were made directly to him, and only then transmitted to the insurance company. Such payments for fringe benefits may not constitute "salary" in the strictest sense of that word, but they are compensation.

318 N.E. 2d at 694. In *Opinion by the Justices*, 30 So. 2d at 17, Alabama's highest court said that: "[W]e are inclined to the conclusion that the benefits received from group insurance ... may be considered as some increase in compensation. So considered, officers who have a fixed and unexpired term would not, during such term, be treated as within the group entitled to its benefits."

We recognize that Article 23A, §2 of the Maryland Code, which generally sets forth the express powers conferred upon home rule municipalities, appears to draw a distinction between the "compensation" of municipal officers and the provision of a group insurance plan for such officers. *Compare* Article 23A, §2(b)(21) *with* §2(b)(26).   However, if a particular payment or benefit

constitutes compensation under Article III, §35, a statute cannot insulate it from the constitutional restriction merely by characterizing it as something other than compensation. *Cf.* 63A Am. Jur. 2d *Public Officers and Employees* §9, at 673 (use of term "office" in statute is not controlling on whether a position constitutes an office.).

In our opinion, government payment of group health insurance benefits is compensation under §35 and may not be paid to a member of the Common Council until the beginning of a new term.[2]

## IV

## Pension Rights

Once again, no prior opinion of the Attorney General has addressed the issue whether conferring upon an officer a right to a non-contributory pension constitutes compensation during his or her term in violation of Article III, §35. The office has concluded in prior advice that a benefit change in a retirement allowance was not "extra compensation" within the meaning of the first clause of §35. *See* Letter of Advice to the Honorable Harry J. McGuirk from Attorney General J. Joseph Curran, Jr. (July 26, 1990).[3] This view is supported by ample authority. *See* 67 C.J.S. *Officers* §236, at 752 (citing cases). In *Comptroller v. Klein*, 215 Md. 427, 434, 138 A.2d 648 (1958), the Court of Appeals suggested that the first and second clauses of §35 should be construed harmoniously. Therefore, if pension law changes do not constitute compensation under the first

---

[2] In *Comptroller v. Klein*, 215 Md. 427, 138 A.2d 648 (1958), the Court of Appeals said that the words "his term of office" in §35 refers to the specific individual's term, not the term of the office. Thus, a public officer, appointed to fill out an unexpired term, could receive an increase in compensation that had been provided for after the appointment of his or her predecessor but before the officer's own appointment. 215 Md. at 433-34.

[3] The memorandum attached to the July 26, 1990 advice letter noted that because the Legislature is generally free to diminish a pension benefit as it substitutes another, such adjustments "could not reasonably be viewed as either an addition or subtraction from compensation."

clause of §35, they should not be regarded as an in-term increase in compensation prohibited under the second clause.

Although there is some division of authority on the point, the majority of cases outside of Maryland indicate that receipt of a right to a pension is not an in-term increase in an officer's compensation. *See Voohees v. City of Miami*, 199 So. 313, 316 (Fla. 1940) ("Pensions are not regarded in the nature of increased compensation to public servants, as forbidden by the Constitution ...."); *People v. Wright*, 40 N.E.2d 719, 724 (Ill. 1942) (a change in compensation during a term does not affect pensions because the beneficiary does not receive the pension during the term); *Cook v. Chilton*, 390 S.W.2d 656 (Ky. 1965) (legislation increasing judge's pension contribution rate did not unconstitutionally decrease compensation); *Campbell v. Kelly*, 202 S.E.2d 369, 376 (W.Va. 1974). *But see Chamber of Commerce of Eastern Union County v. Leone*, 357 A.2d 311 (N.J. Super. 1976) (legislator's right to a pension is present compensation that may not be increased).[4]

In our opinion, these majority decisions resolve the issue correctly. Although in an economic sense a pension may be said to be a type of deferred compensation, a pension has certain unique characteristics that differentiate it from the forms of compensation encompassed by Article III, §35. It results in no current receipt of money benefits nor, in fact, anything additional *during* the term. And such compensation was not likely within the contemplation of the framers when the provision was added to the Constitution in 1851.

For these reasons, it is our view that inclusion of members of the Common Council in a non-contributory pension system does not impermissibly increase the compensation of public officers during their term.

---

[4] The New Jersey decision appears to have turned on the fact that the New Jersey constitution did not limit compensation increases simply to those occurring during the term, and that the constitutional proscription was added to the state's constitution at a time when pensions were a well-known element of compensation. 357 A.2d at 322.

## V

## Conclusion

In summary, it is our opinion that members of the Westminster Common Council may not receive an in-term health insurance subsidy but may be included in a non-contributory pension system.

J. Joseph Curran, Jr.
*Attorney General*

Robert A. Zarnoch
*Assistant Attorney General*

Jack Schwartz
*Chief Counsel*
  *Opinions & Advice*